A. L. BELL and Wife v. M. McJONES and Wife.

(Filed 29 September, 1909.)

**1. Issues, Sufficient.**

> An issue is not open to objection which clearly arises from the pleadings and under which any phase of the evidence and of the controversy may be presented.

**2. Deeds and Conveyances—Married Women—Principal and Agent— Fraud—Reformation of Deed.**

> In an action to reform a deed of a married woman, evidence is sufficient which tends to show; that defendant, acting through her husband as her agent, bargained to sell the whole of her certain lot, which was not measured at the time but afterwards ascertained to have a frontage of sixty-five feet, and that her husband, thereafter, induced, by fraudulent act and representations, the plaintiff to accept a deed conveying only a frontage of fifty feet, leaving out a large portion of a house which was to have been included in the conveyance, and that she received the purchase price for the sixty-five foot lot; and an instruction is correct, that the jury should find for plaintiff if defendant knew the whole lot was not conveyed and that plaintiff was deceived thereby and induced to accept the deed thinking it conveyed the whole lot bargained for.

**3. Same—Equitable Relief.**

> When a *feme covert* admits a contract for the sale of a certain lot of her land by her agent, and has received the purchase money,

she cannot profit by his fraud in inducing her grantor to accept a deed for a smaller lot, and thus profit by his fraud; but she will be held as trustee of the unconveyed property to the end that the agreement may be executed; and equity will decree correction of the deed, and if such is not done, the registration of the decree as a conveyance. Revisal, 567.

APPEAL by defendants from *Peebles, J.,* May Term, 1909, of BEAUFORT.

The facts are sufficiently stated in the opinion.

*Nicholson & Daniel* and *Ward & Grimes* for plaintiffs.
*Small, MacLean & McMullan* for defendants.

CLARK, C. J. The *feme* defendant, Lydia Jones, wife of M. M. Jones, owned a lot in Belhaven, which fronted on Water Street of that town. The plaintiffs introduced a deed to her for this lot, which showed that it was 65 feet wide and 250 feet deep. The plaintiffs alleged and offered evidence tending to show that M. M. Jones proposed to sell them this lot, which was called by them the "Sam Wilkinson lot," and in consequence of this offer and subsequent negotiations the plaintiffs agreed to buy the same and pay therefor the sum of $1,000; that defendant, M. M. Jones, thereafter produced a deed for it, in which the lot was described as being only 50 feet in width or frontage upon Water Street, and fraudulently represented to the plaintiffs that it conveyed the "Wilkinson lot." Plaintiffs contended that they accepted the deed, understanding that it conveyed the whole of the lot of 65 feet frontage, but they afterwards found out that it only conveyed them a lot 50 feet by 250 instead of a lot 65 feet by 250. The evidence of the defendants tended to show that only 50 feet frontage was to be conveyed. The defendants lived next to the lot conveyed. The *feme* defendant joins in the answer, admits the receipts of the $1,000 and that she and her husband did agree to sell the plaintiff a lot on Water Street for $1,000, and that such lot would include the dwelling house on said property. It appears in the evidence that with only 50 feet frontage the deed conveys only 4 feet 11 inches of the house (and the porch), leaving over 11 feet of the house on the 15-foot strip retained by the defendant.

It was in evidence that when the deed was delivered the male defendant, who had conducted all the negotiations, brought it and said, "Here is the deed for the S. E. Wilkinson lot"; that he was going off next morning and must have his money that night. The plaintiff and his wife read the deed only as far as the consideration; finding that stated to be $1,050, a dispute

BELL *v.* McJONES.

BELL *v.* McJONES.

arose, which was finally settled by the plaintiff paying $1,000, which the male defendant accepted, and departed. The deed was not read further. Later, on reading the deed, it was found that only 50 feet was conveyed. A reform of the conveyance, so as to include the other 15 feet, was demanded and refused, though the *feme* defendant offered to let the plaintiff move the house upon the 50 feet.

It appears that the *feme* defendant, through her husband, as agent, agreed to sell the "Wilkinson lot," fronting on Water Street, to the plaintiff; that it was understood by both parties that the land conveyed would embrace the house. There were no measurements made. The court stated to the jury the contentions of the parties and told them that this was an action to reform a deed, and that in actions of this kind the rule of evidence was different from what it is in ordinary cases; that in this case the burden is upon the plaintiffs to satisfy the jury by clear, strong and convincing proof that the bargain made by the parties was as is claimed by plaintiffs—that if the plaintiffs did not know the width of the lot, and that the male defendant at the time he delivered the deed said, "Here is your deed for the Wilkinson lot," and that defendants knew that it did not convey the Wilkinson lot, but only a part of it, and plaintiffs were deceived thereby and induced to accept the deed, thinking it conveyed the whole of the Wilkinson lot, then you will answer the first issue "Yes"; otherwise you will answer it "No." To this charge the defendants excepted.

The issue submitted was, "Was the deed from defendants to the plaintiff executed by fraud, as alleged?" The defendants excepted, but this issue clearly arises upon the pleadings, and upon it any phase of the evidence and of the controversy could be presented.

Coverture was not pleaded. It appears in the evidence that M. M. Jones, in the whole negotiation, was acting as agent for his wife. She admits as much in her answer, which says that the land sold was to embrace the house, and that she received the money. If, as the jury find, the understanding was that the deed was to cover the whole lot, but M. M. Jones, by saying "Here is your deed," misled the defendants and procured payment of the $1,000, the wife cannot profit by the fraud. She made her husband her agent, and if he represented that the deed was to embrace the whole lot and received the money from the plaintiffs, who accepted the deed on M. M. Jones' statement, "Here is the deed for the Wilkinson lot," thinking it conveyed the whole lot, the *feme* defendant is bound by the conduct of her agent.

BELL *v.* McJONES.

This is not the case of one signing a deed without reading it, though if that were the case it might well come under the principle so well laid down by *Mr. Justice Hoke* in *Gray v. James,* at this term. But here the deed was signed by the other party, and the plaintiffs accepted the deed, relying upon the statement, "Here is the deed for the Wilkinson lot," defendant saying at the same time he must go, and asking for the money. The case falls, therefore, under *Gwaltney v. Ins. Co.,* 130 N. C., 629; *ib.,* 132 N. C., 928.

Nor does the question of the power of a married woman to contract arise. She contracted through her husband, as her agent, and, therefore, with his assent, to sell the "Wilkinson lot." She admits this in her answer, and that the lot conveyed should embrace the house. The deed delivered covers only 4 feet 11 inches of the house. The jury find that the agreement between the parties was for the whole lot, 65 feet, and that the delivery, instead, of a deed for 50 feet, was a fraud. It is clear that as to one *sui juris* the judgment should direct correction of the deed to conform to the contract. As the *feme* defendant was acting through her agent, it is incumbent upon her to correct any error committed through her agent's fraud. She received, by the jury's finding, payment for a 65-foot lot, upon an understanding that the deed should convey 65 feet, and the decree properly adjudges the correction of the deed and, if not done, the registration of the decree as a conveyance under Revisal, sec. 567.

The law applicable is thus stated, 1 Perry on Trusts (5 Ed.), sec. 170: "In equity, if a married woman has obtained property by fraud, the court disregards the technical rules of common law in regard to married women and converts her, by construction, into a trustee and compels her to do justice by executing the trust. . . . This is on the ground that infants and married women shall not take advantage of the rules made for their protection to perpetrate frauds upon innocent persons, but they shall be bound by their own fraudulent representations or by equitable estoppels, like other persons." Here, as the jury find, the *feme* defendant, through her husband, as her agent, agreed to convey the whole lot, of 65 feet. She received the agreed purchase money therefor, but fraudulently her agent delivered a deed for only 50 feet. The court, on these facts, found, properly decreed her a trustee of the 15 feet and directed a conveyance thereof to the plaintiff and the registration of its decree as a conveyance. The subject is fully discussed by *Mr. Justice Walker* in *Warehouse Co. v. Ozment,* 132 N. C., 839.

All our authorities hold that where a married woman obtains anything of value she will not be allowed to retain it and not pay the price. *Bridgers v: Bridgers,* 101 N. C., 71. She must give up one or the other. *Burns v. McGregor,* 90 N. C., 223, and cases citing it, in annotated edition. Where she has received the price and refuses to make the conveyance, the fund can be followed, where she has invested it and subjected. *Hodges v. Powell,* 96 N. C., 69, citing *Scott v. Battle,* 85 N. C., 184. Where the party who made the contract was not her agent, she can disavow the contract upon return of the money received. *Boyd v. Turpin,* 94 N. C., 137. But when, as here, she admits the contract was made by her agent and has received the purchase money, she cannot profit by his fraud, but will be held trustee of the unconveyed property, to the end that the agreement may be executed.

No error.