JAMES M. LLOYD v. THE SOUTHERN RAILWAY COMPANY.

(Filed 22 April, 1915.)

**Railroads—Master and Servant—Accident—Damnum Absque Injuria.**

The plaintiff being employed by the defendant railroad company in a gang to replace the cross-ties under the rails of the road, relied upon evidence in his action for damages which only tended to show the manner in which the work was done, *i. e.*, the cross-ties would be placed on the rail on one side of the track, pushed until the end reached the inside line of the other rail, depressed by the plaintiff in the middle of the track, so that it would go under the rail, and shoved into position by the men at the end of the tie, assisted by himself; that while thus being depressed into position his hand was caught between the end of the tie and the rail, causing the injury complained of; that the plaintiff had no explanation to make of the occurrence, except "he had his hand on the tie to bear it down, and it went over and the end flew up and caught his hand." *Held*, the injury was the result of an accident in doing work of a simple nature, not requiring more than ordinary skill and experience, with an unusual effect, almost impossible for the defendant to have guarded against, and a recovery should have been denied as a matter of law.

CLARK, C. J., dissenting.

APPEAL by defendant from *Rountree, J.,* at December Term, 1914, of ORANGE.

Civil action tried upon these issues:

1. Was the plaintiff injured by the negligence of the defendant company, as alleged in the complaint? Answer: "Yes."

2. Did the plaintiff, by his own negligence, contribute to his injury? Answer: "Yes."

3. What damages, if any, is the plaintiff entitled to recover? Answer: "$500."

In apt time the defendant moved to nonsuit, which motion was overruled. From the judgment rendered, the defendant appealed.

*John W. Graham, A. H. Graham for plaintiff.*
*E. S. Parker, Jr., for defendant.*

BROWN, J. The plaintiff introduced evidence tending to prove that on 26 September, 1913, he had been in the employ of the railway company about nineteen months, doing work of the kind he was engaged in on that day; that he and four other men were engaged in the work of taking out old ties and putting in new ones under the rails on the trestle across Haw River; that the ties were about 11 feet long, and that they were thrown down across both rails. There were two men on the scaffold on the west side of the rails and two men on the east side, and that plaintiff was in the center of the track. The tie was first pulled back west until the east end dropped down just inside the east rail. Then the plaintiff, putting his hands on the tie, the two men west joined together in pushing the tie east under the east rail until the western end of the tie would drop down just inside the western rail, when the tie would be pushed back west by the joint effort of the plaintiff and the two men to the east of the east rail until it was in position.

The plaintiff testified: "I have no explanation to make other than I had my hand on the tie to bear it down, and it went over and the end flew up and caught my hand."

On cross-examination he testified: That two men, named Mitchell and Watson, were on the west side of the track and that he was in the middle, and that all three caught hold of the tie and shoved it across, and that it went too far and caught his hand and mashed his fingers. He testified that he was shoving the tie, but that the real strength that pushed the tie came from the men to the west.

We are of opinion that the injury received by the plaintiff was the result of an accident, pure and simple; it was an unusual effect of a known cause, and, therefore, not expected, and almost impossible to guard against. In work of that kind the amount of human strength expended

in pushing the ties cannot be regulated with mathematical accuracy. The work was simple and required no more than ordinary skill and experience. It is such an accident as might happen to one engaged in many different kinds of labor; it may happen to the farm laborer, to the house builder, as well as to the railroad employee.

This case is governed by the principles laid down in *Brookshire v. Electric Co.,* 152 N. C., 669; *Simpson v. R. R.,* 154 N. C., 51. It is very much like *Lassiter v. R. R.,* 150 N. C., 483, in which the plaintiff in that case was injured while unloading rails from a flat car, caused by a rail bounding back in an unusual and unexplained way and striking him. As said by *Mr. Justice Douglas* in *Bryan v. R. R.,* 128 N. C., 387: "The employer is not responsible for an accident simply because it happens, but only when he has contributed to it by some act or omission of duty."

We see nothing in this case upon which to base the charge of negligence.

The motion to nonsuit is allowed.

Reversed.

CLARK, C. J., dissenting: The plaintiff was not intentionally injured, of course, by his fellow-servants, but there is evidence that his injury was due to their negligence and not "purely an accident." The evidence shows that he was not injured by any unforeseen circumstance, but because his coemployees, though looking at him and knowing that his hand was on top of the tie to depress it so that the end might go under the rail, negligently and carelessly shoved the tie with unnecessary and sudden force, so that he did not take his hand off in time to prevent the injury. The jury find that he was guilty of contributory negligence doubtless because he might have been quicker in taking his hand off the tie. But the jury found, as authorized by the act of 1913 and the charge of the court, that the greater negligence was on the part of his coemployees.

On the motion of nonsuit the evidence must be taken more strongly in favor of the plaintiff. But in any aspect of the evidence, if there is any to make it an accident, this was a matter for the jury, and they have found by the preponderance of the evidence and under a correct charge by the judge that the injury was not an accident, but that it was due to the negligence of plaintiff and his fellow-servants, and in the larger degree to the latter.

In *Rushing v. R. R.,* 149 N. C., 160, this Court held: "Motion for nonsuit was properly denied; the case was properly one for the jury," and added: "The court correctly charged, though excepted to, if the jury should find by the greater weight of the evidence that while the plaintiff was carrying the log he stumbled and fell, and while down his fellow-servants, who could have prevented the injury by holding the log,

negligently and carelessly threw down their end of the log when by the exercise of ordinary prudence they could have held it and prevented the injury, then it would be chargeable to the negligence of the defendant's employees, and if this negligence of his fellow-servants was the proximate cause of the injury, the jury would answer the first issue Yes." The present case is stronger for the plaintiff, because he did not fall, but was in his proper place with his hand on top of the tie in the discharge of the duty assigned·him to depress it so that the tie might pass under the rail, and he was injured by the sudden, unexpected, and unnecessary exertion of too much strength by his coemployees in pushing the tie in a manner to prevent his taking his hand out of the way, which assuredly he would have done if notified. Otherwise, he would have been injured solely by his own negligence, which the jury negatived.

In *Buchanan v. R. R.,* at this term, *Hoke, J.,* says: "In *Russell v. R. R.,* 118 N. C., 1098, and in cases before that time it was declared to be the correct principle that if, on a given state of facts, two men of fair minds could come to different conclusions as to the existence of negligence, the question must be determined by the jury."

In *Forsyth v. Oil Mill,* 167 N. C., 180, *Brown, J.,* says: "It is well settled that the Court cannot direct a nonsuit and give judgment in favor of defendants, on whom no burden rests, when there is more than a scintilla of evidence tending to prove plaintiff's contention or when there is evidence from which a reasonable person might draw a deduction to sustain the plaintiff's contention." In the case at bar a jury of twelve impartial men found not only a scintilla, but by the preponderance, of evidence that this was not an accident, and that the injury was due to the negligence of the defendant, and the learned judge who tried the case drew the deduction, as "a reasonable person," that there was evidence of negligence, submitted the case to the jury on the issue of negligence, and refused to set aside the verdict on an allegation that it was against the weight of the evidence. The thirteen men who heard this cause and saw the bearing of the witnesses on the stand and who were charged with the duty of passing upon the weight to be given their testimony must be presumed to be "reasonable persons."

In *Hodges v. Wilson,* 165 N. C., 323, *Walker, J.,* says: "The court properly refused to nonsuit the plaintiffs. There was evidence to support their contention, which upon such motion must be viewed most favorably to them," citing *Snider v. Newell,* 132 N. C., 614; *Bivings v. Gosnell,* 133 N. C., 574; *Boddie v. Bond,* 154 N. C., 359; *Ball v. McCormick,* 162 N. C., 471. The same judge, in *Walters v. Lumber Co.,* 165 N. C., 388, said: "Upon the motion to nonsuit, which was refused, there was evidence of defendant's negligence, which should be construed most favorably for the plaintiff." The jury here found that both the plaintiff and defendant were negligent. There was no accident.

The fellow-servant act (Rev., 2646) is discussed and its history given in *Coley v. R. R.,* 129 N. C., 407. In *Sigmon v. R. R.,* 115 N. C., 181, the Court said: "The fellow-servant law applies to all railroad employees, whether injured in running trains or rendering any other service"; and on page 184 said: "The plaintiff was injured by the negligence of a fellow-servant while working upon and repairing a bridge of the defendant." That case was approved in *Nicholson v. R. R.,* 138 N. C., 518, where it is said: "Such business is a distinct, well known business, with many risks peculiar to itself, and all the employees in such business, whether running trains, building or repairing bridges, laying tracks, working in the shops, or doing any other work in the service of an operating railroad, are classified and exempted from the rule which requires employees to assume the risk of all injuries which may be caused by the negligence of a fellow-servant."

The doctrine of assumption of risk has been eliminated by the fellow-servant act, *Coley v. R. R.,* 128 N. C., 534; *Cogdell v. R. R.,* 129 N. C., 398; *Mott v. R. R.,* 131 N. C., 234, in which it is held that it is "error to submit an issue as to assumption of risk when the cause of action is injury to railroad employees."

Laws 1913, ch. 6, sec. 3, provides that "In actions for damages against the common carrier to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risk of his employment in any case where the violation by such common carrier of any statute enacted for the safety of its employees contributed to the injury or death of such employee, or the death or *injury was caused by negligence.*"

This action is not brought under the Federal act, but under the above State statute. The plaintiff put his hand on the cross-tie in the regular course of his employment and as he was instructed to do, to bear it down and guide it so that the end would go under the rail, and the force which shoved it too far came entirely from the two men at the west end of the cross-tie. It was not an accident merely because the injury "was unusual, and unexpected," because almost all injuries from negligence are thus caused. It is rarely indeed that an injury is caused intentionally by a fellow-servant.

His Honor charged the jury, and he is sustained by the evidence, that the plaintiff contended from the evidence that the jury should find that usually and ordinarily in shoving the ties they are only shoved in far enough to go by one rail, so that the tie could drop down and be pulled back under the other rail, but that on this occasion careless and negligent employees, without regard to the possible injury to the plaintiff, shoved the tie so far that it went too far and tilted over and mashed his hand, and that the ordinarily prudent man situated as the fellow-workmen on

the west side of the plaintiff ought to have apprehended, and would have apprehended, as reasonable men, that the injury would result from shoving that tie in the manner in which they did. The judge then gave the contention of the defendant, and the jury found with the contention of the plaintiff.

The evidence was submitted to twelve impartial jurors, who found by preponderance of the evidence that the plaintiff was injured by the negligence of his fellow-servants in the manner described, whose negligence was greater than his, and there must have been sufficient evidence to justify "a reasonable person" in so thinking, as the learned judge submitted the issue to them, and also refused to set aside the verdict on the alleged ground that it was against the weight of the evidence.