OTTO LUCHESSI, et al. v. LETHA BARNARD, et al.

Western Section. March 23, 1928.

A. C. Muir and Geo. E. Neuhardt, of Memphis, for plaintiff in error.

Benjamin L. Matthews, of Memphis, for defendant in error.

HEISKELL, J.  In the court below, these cases were consolidated, tried before a jury as one, and for convenience in this court, we shall refer to the status of the parties as the same was below.

These suits were instituted to recover damages for personal injuries and property damage, arising out of an automobile accident which occurred at the intersection of Florida and Trigg avenues in the City of Memphis, on or about December 25, 1926.

The plaintiffs below, John E. Barnard by next friend and Mrs. Letha Barnard, seeking recoveries for personal injuries, were passengers or guests in the automobile of one William Robinson, the latter being the third plaintiff herein, and he seeks a recovery for property damage to his automobile.  The said suits are based on the alleged negligence of the defendants, in driving their automobile over the said crossing or intersection, and in a negligent manner, coming in contact with the automobile of the said Robinson in which the said passengers or guests were alleged to have been injured.

The jury found for the plaintiffs as follows: John E. Barnard $1500; Mrs. Letha Barnard $500 and William Robinson $70.  The defendants appealed and have assigned errors.

The first assignment of error is as follows:

"The court erred in overruling motion of the defendants for a mistrial challenging the whole array of the panel, because of cer-

tain questions pertaining to indemnity or automobile insurance, asked by the attorney for the plaintiffs, as follows, to-wit:

"During the examination of the jurors on the voir dire, the following occurred:

"Q. I will ask you whether any of you are interested in any way in any automobile accident insurance company, that is, have stock, are stockholders of any kind?

"Or whether you are interested in any way in the Federal Automobile Insurance Association as a stockholder?

"Mr. Muir: I want the record to show that I am objecting to this line of examination as being highly prejudicial to the case of the defendant.

"The Court: He merely asked the question.

"Mr. Mathews: I am just asking the question to qualify the jury.

"Mr. Muir: I except.

"Q. Do any of you know Mr. W. B. Yowell, division manager with the Federal Automobile Insurance Company?

"Mr. Muir: I am objecting to the question; it not only shows a line of examination and interrogation prejudicial, but I think it plainly shows an unfair attitude.

"The Court: The objection is overruled.

"Mr. Muir: I except.

"The Court: He asked the jury if they knew Mr. Yowell.

"A Juror: You asked if I knew Mr. Yowell?

"Mr. Mathews: Yes.

"The Juror: I am acquainted with him.

"Q. How well do you know him?

"A. I have been acquainted with him about five years. I believe personal acquaintance, and some members of my family did have an insurance policy with him.

"The Court: Now, don't tell about that; he asked you, if you were acquainted with him.

"Q. You are a close friend, aren't you? A. I can't say we are close friends.

. . . . . . .

"At conclusion of all evidence, the jury retired.

"Mr Muir: At this time, I desire to enter a motion for a mistrial because of the questions that counsel for plaintiffs put to the jury yesterday morning on their voir dire examination, which substantially interrogated prospective jurors, first, as to whether or not they were stockholders or connected with any existing automobile insurance company in Memphis. Secondarily, if they had that or a similar connection with the Federal Automobile Insurance Company in Memphis. Third, if any of them knew, or had any connec-

tion with Mr. Yowell, purporting to be the resident manager of the said Federal Automobile Insurance Company.

"I want to add that Mr. Yowell, the purported agent of the Federal Insurance Company was not in this court room at any time during the trial.

"Which motion was by the court overruled, and to which action of the court, the defendant, by counsel, then and there excepted, thus creating prejudice in the minds of the jury against the interests of the defendants."

The motion which was made the basis of this assignment is called a motion for a mistrial, but in the first sentence of this assignment it is spoken of as a motion for a mistrial challenging the whole array of the panel. In argument the motion is spoken of as challenging the array of the panel. As we understand, a motion challenging the whole panel, is equivalent to a motion to quash the venire. 35 Corpus Juris, sec. 418, p. 374.

This motion comes before the selection of the trial jury from the panel or venire and is waived by selecting the jury or by challenge to the polls. 35 Corpus Juris, sec. 420, p. 376.

Objection to venire must be made before going to trial. State v. Cole, 9 Hum., 626.

We think this motion must be treated as a motion for a mistrial on the ground of presumed prejudice and bias, created in the minds of the jurors by questions asked the jurors on their voir dire. As such it came too late. The language of the motion is "I desire to enter a motion for a mistrial because of the questions that counsel for plaintiff put to the jury yesterday morning on their voir dire examination."

If there was any prejudicial effect on the mind of jurors it was before the jury was sworn and before any evidence taken and that was known to defendants and their counsel at the time, yet no motion is made for nearly two days and after the proof is all in.

The last paragraph of the first assignment is somewhat peculiar. It reads: "Which motion was by the court overruled and to which action of the court, the defendant by counsel then and there excepted thus creating prejudice in the minds of the jury against the interests of the defendants." Counsel does not mean, however, that the action of the court on his motion created the prejudice because the jury had retired at the end of the evidence and the motion and ruling of the court thereon were in the absence of the jury. The only prejudice that could have arisen was caused, if at all, before the introduction of any testimony and during the selection of the jury.

Motion to discharge jury pending trial must be made as soon as ground for motion discovered, as for instance, anything going to the bias or prejudice of the jury. 35 Corpus Juris, sec. 490, page 421.

Misconduct of jury or of juror must be brought to the attention of the court as soon as discovered or it is waived and cannot be made the ground of motion for mistrial. 16 R. C. L., sec. 120, p. 313; Cantrell v. State, 2 Shan., 249; Twinkle v. Dunivant, 16 Lea., 503.

The second headnote in this last case is as follows:

"If a jury is tampered with by a party interested in the result of a suit and the same is known to opposing counsel either before the selection of the said juror to try the case or before the introduction of any testimony a new trial will not be granted. The objection should be made when the jury is empaneled, or as soon thereafter as counsel are apprized of the fact."

In short, the rule is that whatever may be the objection, whether to the venire; to the whole jury after selection; misconduct of a juror or of the whole jury; improper influence brought to bear upon the jury, or on a juror, the complaint must be made to the court just as soon as the ground for it is known, or it is waived.

If the motion can be considered as made in time, was it reversible error for the court to overrule it? Counsel for defendant concedes that counsel for plaintiff was entitled to ask the jurors one question as to their interest in any automobile accident insurance company, in order to determine whether or not to challenge either for cause or peremptorily, but it is contended that three questions were too much and calculated to convey too strongly to the jury the impression that defendants carried indemnity insurance and that an insurance company was interested in the result of the suit.

Counsel for plaintiff insists that he asked only two questions, the first question being as to interest in any such insurance company or in the Federal Automobile Insurance Association. The third question could not be considered objectionable. One juror who had no interest in the insurance company did know Mr. Yowell and counsel for plaintiff had a right to find this out. Counsel for plaintiff in an affidavit filed on the motion for new trial says he knew that the Federal Automobile Insurance Association carried insurance for defendant, that W. B. Yowell was division manager for said association and that on the morning of the trial he had seen Mr. Yowell entering the courthouse and supposed he would be present at the trial after the jury was selected. -

The only question therefore seems to arise on what counsel for defendant calls the second question propounded to the jurors and what is termed by counsel for the plaintiff, the second clause of the first question. It is conceded that it was proper to ask the jurors whether any of them were interested as stockholders in any automobile accident insurance company, but that it was reversible error for the court to allow the question as to interest in The Federal Automobile

Insurance Association. Or perhaps counsel would admit that either question might be asked but not both.

Counsel for defendants cites in support of this assignment 35 Corpus Juris 394-396, which reads as follows:

"It is well-settled that for the purpose of ascertaining the qualifications of proposed jurors it may be shown that an insurance company is interested in the result of the action, and a juror may properly be interrogated upon his voir dire as to whether he is a stockholder in, employed by, or in any way concerned with, any such insurance company which is thus interested in the litigation, although such company is not made a party. The same right exists where plaintiff's counsel believes, or claims, or has been informed, or offers to show, that an insurance company is interested in the case, or where defendant's counsel refuses to inform him whether defendant has insurance. Such a method of examination has been held proper even where there is nothing to show that any insurance company is interested; but there is also authority to the contrary. Indeed the right of counsel to interrogate a juror would seem not to be confined to laying the basis for a challenge for cause, but is also proper to enable him to use intelligently his statutory right of peremptory challenge."

The reason why counsel cited this text was on account of the words "but there is also authority to the contrary" and counsel presents the cases which he thinks authorizes the language of the text that there is authority to the contrary. When examined, we think these cases are not really in conflict with the text as applied to the facts of a case like the present, but if any of them can be considered as in conflict with the rule laid down in the text quoted, at least the text is supported by the great weight of authority.

In the case of John Rinklin v. Charles H. Acker, 125 N. Y. App., 244, the court said:

"I confess I can see no valid distinction between a question which embraces all insurance companies and one which refers to but one; the greater includes the less; if, in answer to the more general question, a juror should answer in the affirmative, no one would deny that the question relating to the specific company would then be material; and if it may be asked, after an affirmative reply to the general question, why may not the counsel go at once to the specific? Suppose in the trial of a case against the 'A. B.' Railroad, counsel should ask the jurors if they were officers of any railroad; no one will doubt that the question is material, for it goes to the matter of bias; it seems to me that it would be perfectly proper for counsel to waive the right to ask in regard to all other railroad companies

and voluntarily limit his inquiry, if he saw fit, to whether the proposed jurors were officers of the 'C. B.' Railroad.''

In the case of Citizens' Light, Heat & Power Co. v. Lee, 182 Ala., 561 (1913), it appeared that the plaintiff before the trial was entered upon, filed a written motion to the effect that she desired to qualify the jurors as to their interest as stockholders, employees or otherwise, in a certain insurance company, for the reason that such company had agreed to indemnify the defendant to the extent of five thousand dollars ($5000) in case judgment was entered against it in this action, that its attorney was appearing to defend this action, and that the insurance company, instead of the nominal defendant, was the real party defendant in the action. To the filing of this motion, defendant objected, likewise to its being read in the presence of the jury, and to the introduction of any evidence in support of its allegations, taking exceptions to the adverse ruling of the court in each case. It also appeared that before allowing proof of the allegations of the motion, the court stated, in effect, that such proof need not be made if counsel would agree to qualify the jury without so doing, but that the defendant refused to agree to the procedure on any terms. The plaintiff then made her proof, and the overruling of its exceptions thereto formed part of the basis of defendant's assignment of error in connection with this matter. Affirming the judgment, the court held that any person interested in such insurance company was disqualified to sit on the jury in the trial of this case; that it was proper, if any such person was on the jury, for the court to be informed of that fact; that the proper time for so informing the court was before the trial was entered upon; that upon the refusal of the defendant to admit the interest of the insurance company in the outcome of the suit, it was the right of the plaintiff to make proof of that interest; that such interest being shown, it was the right and duty of the court and the plaintiff to qualify the jurors with respect to their interest in such company; and that while if ''it were known to counsel and to the trial court that none of the jurors were disqualified on account of the matters set forth in the motion, it would, of course, be highly improper to parade the fact that the insurance company would be liable, yet since it did not appear that either court or counsel had such knowledge at the time the motion was made or the evidence to support it given, it could not be held that the proceedings in this matter, in any respect, gave ground for a reversal of the judgment. It was, therefore, affirmed.

In this case the court said:

''Quite a number of cases are cited for appellant to show that the rulings of the court on questions arising out of the motion and the evidence as to the qualifications of jurors were reversible error. Among those most strongly urged are the following:

(the opinion then sets out a list of cases including some of those cited for appellant in the instant case.) In most all of these cases in which a reversal or a new trial was had it was on account of remarks of counsel during the progress of the trial after the jury had been qualified and selected and the remarks were evidently made for the purpose of inflaming the jurors so selected and who were qualified and not for the purpose of ascertaining if any were disqualified and if so, to get rid of them as it is made to appear in this case.

"The only effect the remarks could have had in the cases cited was the improper one above referred to; while in this case the declared purpose of the motion and the evidence was a proper one, to-wit: to ascertain if any of the jurors were disqualified on account of their relation to or connection with the insurance company and to show that the insurance company was directly and financially interested in the verdict. If counsel had a right to make the motion in question—and it seems that they had—and the interest of the insurance company was not admitted, as it could have been and as counsel for defendant declined to do, then of course the plaintiff had a right, and it was her duty to the court to show that the material matters set forth in the motion were true. And this being shown, it was not only the right, but it was the duty of the court to qualify the jurors as to the matters contained in the motion, and presumptively the trial judge instructed the jury that the fact that a surety company had insured the defendant against loss should not influence their verdict. If none of the jurors were disqualified on this account, counsel for defendant could have avoided the evil effects by admitting the averments of the motion, as to which there seems to have been no dispute and have consented that the jurors be qualified on this subject. If it were known to the counsel and to the trial court that none of the jurors were disqualified on account of the matters set forth in the motion, it would of course be highly improper to parade the fact that the insurance company would be liable. But there is nothing in this record to show that either the trial court or counsel had such knowledge at the time the motion was made and the evidence in support of it was offered. For this reason we cannot reverse and ought not to reverse the judgment."

In Coff v. Kokomo Brass Works, 43 Ind. App., 642 (1909), the court reversed a judgment for the defendant in an action to recover damages for personal injuries alleged to have been sustained by the plaintiff while in the service of the defendant, upon the ground that the trial court had abused its discretion by refusing to permit the plaintiff to ask jurors upon voir dire as to their interest in or con-

nection with a certain liability insurance ,company. It appeared that when the court refused to permit such question to be asked, the plaintiff offered to make proof that the said insurance company had in force a policy protecting the defendant, and that its counsel was then in court defending this action for the defendant. This offer, however, was likewise denied. It was urged by the defendant that whatever error occurred, in the making up of the jury, was cured by the action of the plaintiff in accepting the jury without making any peremptory challenge, and that in any event there was nothing to show that the case had not been tried by an impartial jury. The bill of exceptions presented the entire voir dire examinations of jurors, and it did not appear that any of the questions asked and answered gave the information sought to be elicited by the questions barred by the court. The court held, therefore, that plaintiff should have been allowed to interrogate the jurors upon the question of their connection with the insurance company referred to, and that in the absence of a showing that such a refusal was harmless it is not necessary for the plaintiff to show, as a condition precedent to securing such reversal, that some disqualified juror sat in the case.

In the case of Granrus v. Croxton Min. Co., 102 Minn., 325 (1907), appeal was taken from a judgment for the plaintiff on several grounds, among which was the alleged misconduct of the plaintiff's counsel in the voir dire examination of jurors. Counsel, after asking the jurors if any of them were interested in any insurance or liability company, asked counsel for the defendant if there was any liability insurance in the case. Obtaining no answer, the plaintiff's counsel then called defendant's counsel as a witness over objection of appellant, and he admitted that he was the attorney for an insurance company and had been hired by that company to defend the case. It was contended that the inquiry was not made in good faith. In affirming the judgment for the plaintiff, the court held that the plaintiff's counsel had the right thus to interrogate counsel and jurors, and that the record did not show any bad faith on the part of counsel in so doing.

Cripple Creek Min. Co. v. Brahant, 37 Col., 423, 87 Pac., 794 (1906), was an action to recover damages for the death of the plaintiff's deceased husband, alleged to have received fatal injuries, while at work in the defendant's mine, where he was employed. Some of the jurors were asked if they were interested in a certain liability insurance company. In appealing from a judgment for the plaintiff, the contention was made that this conduct was prejudicial error, as the asking of the question unnecessarily called the attention of the jury to the fact that the real defendant was not the one named, but an insurance company. The court, however, affirming the judgment, held that since the record did not disclose that the

question was asked with any such intention, there was no reason for departing from the rule previously laid down by this court that such question was permissible for the purpose of enabling counsel intelligently to exercise their right of peremptory challenge, or challenge for cause.

In Kinney v. Metropolitan Street Railway Co., 261 Mo., 97, during the examination of jurors on their voir dire counsel asked if any one of the panel was connected with the American Fidelity and Accident Insurance Company. Objection to the question was overruled and a motion to discharge the jury was at once made, which motion was denied. On appeal, this was assigned as error and the court held the inquiry proper.

In Bruseau v. Brick Co., 133 Iowa, 246, the court said:

"The jurors were examined on voir dire with respect to their connection with any employer casualty insurance company. A like examination was approved in Foley v. Cudahy Packing Co., 119 Iowa, 246, and since then by the Supreme Court of Wisconsin, Howard v. Beldenville Lumber Co., 108 N. W., 48. See also Autlitz v. Smith, 97 Minn., 217, 106 N. W., 517. The inquiry was rightly permitted."

In Saller v. Friedman Bros. Shoe Co., 130 Mo. App., 712, 109 S. W., 794 (1908), during the voir dire examination of jurors, after one of the jurors had stated, in response to question by plaintiff's counsel, that he was an insurance agent, and as such insured employers against liability in such actions as this, the plaintiff's counsel asked him if he did business with the Travelers Insurance Company. The juror, after objection to the question had been overruled, answered: "I do business with them." Another juror was asked, over objection, if he knew anybody connected with this same insurance company, and he replied that he did not. In affirming the judgment for the plaintiff upon the verdict in his favor for three thousand dollars ($3,000), the court held that it was proper for the plaintiff's counsel "to probe a proposed juror to the bottom, for the purpose of ascertaining whether his social or business relations are such as would probably prejudice him against a recovery in the character of case to be tried."

In Jensen v. Schienz, 89 Wash., 268, 154 Pac., 159 (1916), in appealing from the verdict and judgment, the defendant Schienz assigned this line of questioning as error, sufficiently prejudicial to demand a reversal. Affirming the judgment, the court held: "Counsel had a right to inquire into the business of the juror and to know whether he had any business dealings with any of the defendants, although the examination might reveal the ultimate fact that the defendant was insured."

To the same effect are Walters v. Durham Lumber Co., 165 N. C., 388; Gerard v. Crosvenordale Company, 82 Conn., 271; Armstrong v. Yakins Hotel Co., 75 Wash., 477.

It will be seen from the authorities referred to, that the question is largely one of good faith. If as a matter of fact an insurance company is interested and will have to pay the judgment, counsel for plaintiff is entitled to ask the jury such question on voir dire as will show whether or not the jurors are interested in any such insurance company or the particular company involved in liability. If in fact, no insurance company is interested and counsel for plaintiff knows this, then such question to a juror could have no purpose except to prejudice the jury without cause, and would be highly improper. If counsel for plaintiff believes the defendant is insured and asks counsel for defendant and he declines to answer, then counsel for plaintiff is justified in assuming there is insurance and questions to veniremen based on this assumption cannot be said to be in bad faith.

Counsel for plaintiff says he knew that the Federal Automobile Insurance Association was the real party in litigation. Counsel for defendant says there is no such proof in the record, but he knew how the fact was and could easily have set the matter at rest either in the presence of the jury or before the court in the absence of the jury and upon showing no insurance, the least attempt on the part of counsel for the plaintiff to create an impression on the minds of jurors that an insurance company was liable would be fatal to his case.

Along this line as indicated in the authorities set out, the cases relied on by appellant may be distinguished so far as they hold the questions asked objectionable. They are cases, as pointed out in the 182 Ala. case, supra, in which it was evidently the purpose of counsel to unfairly prejudice the jury and not in good faith to qualify an unbiased jury. The court will assume good faith when the contrary is not to be inferred. Where the questions are asked in qualifying the jury with the honest purpose of finding out whether jurors should be challenged, the cases are well nigh unanimous in holding the questions proper. There is nothing in the present case to indicate that the questions were not asked from a proper motive. Counsel had a right to interrogate the jurors as to interest in the Federal Automobile Insurance Association and we do not think the case should be reversed, because the question was also directed to their interest in any automobile accident insurance company. The assignment is therefore overruled.

The second assignment is that the verdicts are excessive, especially as to plaintiff John E. Barnard. There is really no contention that the other verdicts are excessive, but it is insisted that $1500 for

the boy was too much. The boy was before the court and the jury, as well as the witnesses who testified as to his injuries. As far as we can see, the reason the jury gave him more than his mother, was on account of the scar on his nose. A photograph in the record shows how the boy looked about ten days after the accident, and from this we can well see how even at the time of the trial this scar on his nose might appear as a serious disfigurement. Dr. Mason testified that several places in the boy's face had to be sewed up and while they healed readily, that the scar across his nose would be permanent and perhaps others. Defendants had ample opportunity to offer proof to the contrary and did not do so. We are referred to no rule by which to measure the negative value of a scar on a boy's face so as to reach a different result from that arrived at by the jury and approved by the court. We know of no criterion by which we can say that the amount awarded indicates passion, prejudice and caprice.

The third assignment is that the court erred in giving the following special instruction to the jury:

"I charge you that the plaintiff John E. Barnard would be entitled to recover for any disfigurement, if any, that he may have received as a result of the accident, if you find for him as to liability."

The reason given why this is claimed to be error, is that the court had given the same instruction twice to the jury in the general charge. We have examined the charge and do not find the idea of this special request covered at all. Nothing is said in the general charge about disfigurement. We think there was no repetition in this special instruction and the third assignment is therefore overruled.

All assignments of error are overruled and the judgment of the lower court is affirmed. Appellants will pay the costs of this appeal.

Owen and Senter, JJ., concur.